Good morning, Your Honors, and may it please the Court, Alana McMain, Federal Defenders, on behalf of Appellant Felipe Medina-Navejar. The government should always tread lightly when commenting on a defendant's silence during closing argument. Here, the prosecutor improperly argued by implication that Mr. Medina had not made exculpatory statements when she knew that, in fact, he had. All the prosecutor argued was what occurred at the time of arrest, right? Excuse me, Your Honor? Did the prosecutor only tell the jury what happened at the time of arrest? Your Honor, I would disagree with that. The argument that she put forth, when you look at all three of the statements she made in closing as a whole, make it clear that her argument was not limited to just what happened at the time of arrest. All right. She began the argument... I'm sorry, Your Honor. No, no, go ahead. She began the argument broadly at the beginning by stating that you can tell what a defendant's conscious desire is by looking at what they say and what they do. That did not narrow the argument to things said in the field at the time of arrest. Then, after discussing his actions, she re-began to discuss what he said, and again made a broad statement. What does the defendant say? Again, she did not narrow it there to what is he saying in the field or what did he say right when he was arrested. Now, it is true, Your Honor, that she then went on to discuss the two statements he made directly when he was arrested. She said, he says to Agent Contreras, I'm a Mexican citizen. He says I don't have documents. And then she said, he doesn't say what is a U.S. Border Patrol agent doing in Mexico? Oh my gosh. And she said, he doesn't say that because he knows he's in Mexico. I suppose that was all the argument had been. Keep your first two statements, broad general statements. If they had just said that, would there be any complaint? Your Honor, I think that that would still be an argument I'd be slightly uncomfortable with, but I think that the real problem is that she did it in the context of a greater argument. And I think that's what we're really objecting to here is because the prosecutor has a duty to be accurate with the jury, to not make false implications, and she knows that what she says to the jury is taken very seriously. She has an inherent credibility when speaking to the jury. And so by framing her argument as a large argument about what the defendant said, she was essentially making that broad argument that there are no exculpatory statements. She was impeaching him by omission, basically saying, we know that Mr. Medina didn't or did have the conscious desire to enter the United States, because if he hadn't had the conscious desire, he would have said something. And she knew, in fact, that he had made seven statements. Hours later. Your Honor, yes, there was a gap between that.  Your argument depends upon us taking the prosecutor's argument to be broader than a reference to what happened at the time of the first encounter. Your Honor, yes, I believe that. And if we read the prosecutor's statement as being a reference to what happened at the time of the first encounter, you don't have an objection based on the failure to disclose the exculpatory statements made hours later. That's something different. Your Honor, I still think it's troubling, but I would agree that the basis of my argument is that her statements were meant to convey something broader. And I think that that's also clear in the fact that when she said, oh, the defendant doesn't say, oh my gosh, a Border Patrol agent in Mexico, she said it very facetiously. She said, oh my gosh, the government concedes in its brief that this was a rhetorical flourish and not just a straight literal statement. I think that it's very clear when you put all the statements together what she was going for in this case. And that was to say, you can tell what somebody thinks by what they say and what they don't say. And she didn't narrow that the first time. She didn't narrow that the second time. And yes, she mentioned those field statements, which someone brought it in because she had to mention those statements to support her argument. But the thesis of her argument was very broad, and it was, what does the defendant say? And she knew, in fact, that he had said multiple times that he did not try to come to the United States, that this was a mistake. And for those reasons, I think that the argument was absolutely improper. The government also argued in its brief that this was a way for the government to address a lack of surprise in the field. And I think, similarly, that argument fails. This was not about surprise. Her closing argument did not reference any of the actual testimony by Agent Contreras that Mr. Medina appeared to be coherent, that he was responsive, that he did not appear confused. If that was the argument she was making, simply that Mr. Medina was not surprised at the time of his arrest, she would have brought in those facts. And that wasn't how she headlined the argument. She headlined it by saying, we can tell what he does by what he says. I also believe that there was prejudice in this case from this unfair argument. I think if we look at the Darden versus Wainwright factors, they all do fall in the favor of the appellant in this case. This was the central issue at this case. From the beginning, defense counsel said the only element that we're arguing is the lack of conscious desire. And that was really the only disputed issue. And so the government's argument on that point was extremely powerful. It was the only thing that was really going to matter to the jury when they were making their deliberation. Further, this court has noted that closing argument is a crucial period at the time of – it's a crucial period in terms of whether something is prejudicial. And so the fact that she made these improper statements at the end, at closing argument, I think is also something that demonstrates the amount of prejudice. I also think that this was not a typical 1326 illegal reentry case where all the other evidence pointed to Mr. Medina's guilt. There were not other – this was not a case where someone was hiding in bushes. This was not a case where someone was found in a trunk. Mr. Medina had crossed over in the middle of the day. It was 11 a.m. He walked through a tunnel. And there was testimony that from the Mexico side, there was no border fence that ran over the tunnel, that there was no sign on the Mexican side of the tunnel explaining that you would go into the United States if you crossed through it. There was no fence in the middle of the tunnel to make it clear that you could not come through. There was a very small outline in the dark of the tunnel. But this is someone who walked in, did not hide, did not duck, walked in and they had their eyes on him the entire time. I think that this was a case where the jury could reasonably have believed that Mr. Medina did not have the conscious desire. And so the fact that she used those statements – or the lack of statements, according to her, against Mr. Medina – was something that was very powerful. Because this was a case in which the government did not have good concrete evidence of his desire. You might want to save your last two minutes for rebuttal. Yes, Your Honor. Thank you for noticing. Thank you. Good morning, Your Honors. May it please the Court. Colin McDonald for the United States. The prosecutor's closing argument was fair. And context here, the context in which she made these specific remarks, are key. She never indicated to the jury that these statements were the entire universe of statements that Mr. Medina made to Border Patrol. And instead, at closing, she zeroed in on Medina's specific state of mind in the moments leading up to and immediately preceding his apprehension. If we look closely at the closing argument, the prosecutor here said specifically, we need to look at what Mr. Medina's state of mind was at the time of the crossing. And the way that we can do that is by looking at what he did and by looking at what he said. So in reference to what he did, the prosecutor led the jury properly through evidence that showed that Mr. Medina, as he approached the border line, entered into a train tunnel that leads directly into the United States. The border fence was visible on both sides of the tunnel. Inside the tunnel, there was a clear white line that indicated Mexico on one side, United States on the other. And on the U.S. side of the tunnel, on the north side of the tunnel, there was a sign that said, it's illegal to cross anywhere other than a port of entry, and the nearest ports of entry are Tecate and Calexico. So that's what Mr. Medina did with respect to what his state of mind was when he crossed the border. Then the prosecutor helped the jury understand his state of mind with respect to what he said. As Agent Contreras apprehended him on the north side of the border, Agent Contreras asked him his citizenship, and Medina said, Mexico. He then asked him if he had any papers to be in the United States, and Medina said no. Those were the statements that the prosecutor guided the jury to, and said those statements indicate that Medina knew and intended to be in the United States. The prosecutor didn't say that there were somehow... Those statements or the fact that he didn't make other statements? Those statements specifically indicated and had the tendency to prove his state of mind, but then also further the remark, oh my gosh, a U.S. Border Patrol agent, what are you doing in Mexico? That statement... Yeah, Mike, the question is, are you relying on the silence and the failing to say something more than to answer those questions, or are you relying on the answers to the questions? The government was mostly relying on the statements that were made in addition to Mr. Medina's demeanor and the lack of surprise at seeing a Border Patrol agent, and so that's with a facetious comment, oh my gosh, a U.S. Border Patrol agent, what are you doing in Mexico?  Agent Contreras said that Medina was responsive, that he gave coherent answers, that he did not appear confused or disillusioned, so that was what that argument spoke to, was that if this defendant did not intend to be in the United States, that his demeanor would have looked much different than it ultimately did, and so that was the summation of the demeanor evidence that the prosecutor... You seem kind of reluctant to say what I thought you really were relying on, I mean, when you call it a facetious statement, do you think you just dismiss that as irrelevant, when they said he didn't say, why are you here, or what's the problem, or anything like that? That's not material or important or significant, all that's important is that he answered those two questions the way he did. No, I think that the argument was significant in the course of oral argument, or in closing, if you look at the transcript, the district judge was prodding the prosecutor along and said, hey, let's start to finish this up, so instead of going specifically through each aspect of Mr. Medina's demeanor, she summed it up by saying, and furthermore, he wasn't way surprised, and she resorted to that comment, oh my gosh, a U.S. Border Patrol agent, what are you doing in Mexico? She used that as a way to summarize the demeanor evidence that served as probative evidence of Mr. Medina's state of mind when he crossed over into... It wasn't then his failure to say anything, it was just the fact that it was his demeanor  That's correct, Your Honor. And unless there are any further questions from the court, I will submit. Thank you. Thank you. Your Honor, the prosecutor did not say he didn't act surprised. She never used the word surprised. She never used the word demeanor. She did not say how did the defendant act. She did not say how did the defendant look. None of those are correct. All she focused on was what the defendant said. And the two statements that she did introduce had nothing to do with conscious desire. The fact that he was a Mexican citizen without documents to be in this country did not implicate conscious desire at all. The prosecutor's comments did imply that they were discussing the entire universe of Mr. Medina's statements. The jury had no way to think otherwise. Because when a prosecutor says, let's look at what a defendant says, we're assuming that everything that's there has been introduced. The jury is going to take the prosecutor's word that we can show a lack of conscious desire by what he says to be the fact that, well, everything he says must prove a lack of conscious desire. The entire line of argument by the government was inappropriate for that reason, because it did, I think, imply to the jury that we can actually evaluate Mr. Medina's conscious desire by what he says. When the prosecutor knew full well that an actual evaluation of what Mr. Medina said would not come out in her favor to show conscious desire, it would actually weigh towards defense counsel's arguments that Mr. Medina did not have conscious desire, that he was innocent of the crime of attempted illegal entry. I think that the fact that she discussed the field statements during this section of the argument does not prove that her argument was limited to the field statements. I think it was clear that she was making a greater implication to the jury. There was no way for the jury to assume that there were other statements out there. She didn't say, we're only discussing the statements that were introduced or the field statements. She was talking about everything, and that's what the jury believed. And for that reason, Mr. Medina was convicted unfairly. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Fernandez, Clifton